UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSE GARIBAY-CANELA, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 09-4332 AJW |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

On July 7, 2006, plaintiff filed applications for disability insurance benefits and SSI benefits. [AR 21, 303]. Plaintiff alleged that he had been disabled since March 10, 2003, due to severe back pain. [AR 214]. On May 29, 2008, an Administrative Law Judge (the "ALJ") denied benefits in a written hearing decision. [Administrative Record ("AR") 31-37]. The ALJ noted that plaintiff had filed prior applications for disability insurance benefits and SSI benefits that were finally denied on June 12, 2006. [AR 31].

Applying a presumption of continuing non-disability, the ALJ concluded that plaintiff had not shown "changed circumstances" from the date of the prior decision warranting any change in the prior ALJ's findings.[1] The ALJ found that plaintiff was last insured for disability insurance purposes through December 31, 2007. The ALJ determined that plaintiff had severe lumbar degenerative disc disease, but that he retained the residual functional capacity ("RFC") to perform light work with occasional climbing, stooping, kneeling, and crouching. The ALJ found that plaintiff could not perform his past relevant work, but that alternative work within his RFC existed in significant numbers in the national economy. [AR 36-37].

The Appeals Council denied plaintiff's request for review of the ALJ's decision. [AR 10]. Subsequently, however, the Appeals Council vacated its decision denying the request for review solely as it pertained to plaintiff's application for SSI benefits. The Appeals Council found that plaintiff had submitted new and material medical evidence that showed changed circumstances reflecting a greater level of disability than the ALJ found. [AR 2]. Accordingly, the Appeals Council vacated the ALJ's decision denying plaintiff's application for SSI benefits and remanded the matter for further administrative proceedings. Because the new evidence was dated after December 31, 2007, plaintiff's date last insured, the Appeals Council did not vacate the ALJ's decision denying disability insurance benefits. [AR 5-7].

Plaintiff subsequently filed this action seeking judicial review of the Commissioner's final decision denying his claim for disability insurance benefits.

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

---

[1] A prior, final determination that a claimant is not disabled creates a presumption that the claimant retains the ability to work after the date of the prior administrative decision. See Schneider v. Commissioner of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Lyle v. Sec'y of Health & Human Servs., 700 F.2d 566, 567 (9th Cir. 1983). This presumption of "continuing non-disability" may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. Lester v. Chater, 81 F.3d 821, 827-828 (9th Cir. 1995); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

1  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
2  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is
3  required to review the record as a whole and to consider evidence detracting from the decision as well as
4  evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);
5  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than
6  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
7  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
8  1999)).

## Discussion

### Durational requirement

Plaintiff contends that the ALJ erred in concluding that plaintiff failed to show a deterioration in his lumbar spine impairment prior to his date last insured that had lasted, or could be expected to last, for twelve consecutive months. [See JS 5-12].

To satisfy the criteria for disability under Social Security Act, a disabling physical or mental impairment must last, or be expected to last, no less than twelve consecutive months, or it must be expected to result in death. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909; see also Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). Plaintiff bears the burden of proving that the durational requirement is satisfied. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Young v. Sullivan, 911 F.2d 180, 181 (9th Cir. 1990); see 20 C.F.R. §§ 404.1509 & 416.909. Plaintiff also bears the burden of proving that he was disabled prior to December 31, 2007, his date last insured. See 42 U.S.C. § 423(a)(1)(A); Flaten v. Sec's of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995); Morgan v. Sullivan, 945 F.2d 1079, 1080 (9th Cir. 1991). Thus, plaintiff must prove that prior to his date last insured, he had a disabling physical or mental impairment that had lasted, or was expected to last, at least twelve consecutive months, or was expected to result in death.

The ALJ summarized the relevant evidence relating to plaintiff's lumbar degenerative disc disease as follows. In August 2007, plaintiff was seen for complaints of worsening low back pain radiating into his right lower extremity with associated numbness and tingling. [AR 34]. Plaintiff exhibited "some significant clinical findings." [AR 34]. His treating physician, Dr. Catalino Dureza, opined that plaintiff was

1  temporarily totally disabled for workers' compensation purposes. Dr. Dureza also requested authorization
2  for an MRI and a lumbar corset. [AR 34].

3  An MRI conducted on August 30, 2007 showed mild degenerative disc disease at multiple levels,
4  a 3 millimeter central disc protrusion at L3-4 associated with a small tear involving the posterior annulus,
5  slight narrowing of the neural foramina bilaterally, and mild transverse compression of the thecal sac. At
6  L4-5, there was a possible small tear involving the posterior annulus.[2] AT L5-S1, there was slight
7  narrowing of the neural foramina bilaterally with mild encroachment upon the L5 nerve roots. [AR 34-35,
8  340-341]. The impression was "suggestion of small tears involving the posterior annulus at L3-L4 and L4-
9  L5. While there is no evidence of nerve root compression and the neural foramina are widely patent, these
10 small tears may account for both pain and radiculopathy." [AR 35, 341]. On September 17, 2007, after
11 reviewing those records, Dr. Dureza recommended a pain management consultation for possible lumbar
12 epidural steroid injections. Dr. Dureza saw plaintiff again on October 22, 2007 and November 20, 2007.
13 He continued to opine that plaintiff was temporarily totally disabled. [AR 35].

14 A December 2007 lumbar spine MRI from another treating physician, Dr. Carlos Cordoba, showed
15 L4-5 andL5-S1 disc desiccation, signal loss, and annular fissures with no spinal stenosis, protrusion, or
16 extrusion. There was a focal annular tear at L4-5 and an annular fissure at L5-S1. Dr. Cordoba prescribed
17 extra-strength Tylenol and released plaintiff to return to his regular work on January 5, 2008. [AR 35].

18 The ALJ noted that during the administrative hearing, plaintiff testified that he had an upcoming
19 appointment with an orthopedist; however, plaintiff's counsel had not submitted any additional medical
20 records. The ALJ concluded that "[u]nder the circumstances, the medical evidence does not establish that
21 any worsening of the claimant's condition in August 2007 is ongoing and is reasonably expected to last for
22 12 months." [AR 35].

23 Plaintiff submitted post-hearing medical evidence to the Appeals Council. That evidence included
24 progress reports from Dr. Dureza dated May 1, 2008 and June 3, 2008, orthopedic treatment reports dated
25 January 2009 and February 2009, and an electrodiagnostic study dated February 2009. [See AR 2, 6, 13,

---

[2] The annulus (anulus) fibrosus of an intervertebral disc is "the ring of fibrocartilage and fibrous tissue forming the circumference of the intervertebral disc" and "surrounds the nucleus pulposus, which is prone to herniation when the annulus fibrosus is compromised." Stedman's Medical Dictionary anulus (27th ed. 2000).

4

45-73]. The Appeals Council concluded that this evidence was new and material, and that it showed "changed circumstances, indicating a greater disability" than the evidence before the ALJ, warranting a remand for further administrative proceedings. [AR 2-3].

A reviewing court "consider[s] on appeal both the ALJ's decision" and "additional material submitted to the Appeals Council." Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993) (citing Bates v. Sullivan, 894 F.2d 1059, 1063-64 (9th Cir.1990) and 20 C.F.R. § 404.970(b)). Thus, the question is whether the record as a whole supports the ALJ's finding that the deterioration in plaintiff's severe lumbar spine impairment, which produced "significant clinical findings" between August 2007 to November 2007—prior to plaintiff's date last insured—was not reasonably expected to last for twelve months. [AR 35].

The "significant clinical findings" from 2007 to which the ALJ referred in his decision are reflected in treatment reports from Dr. Dureza, a board certified neurosurgeon, from August 2007 through November 2007. [AR 326-346]. Dr. Dureza's examination findings include "3+" to "4+" tenderness to palpation with spasm and inflammation noted in the bilateral erector spinae muscles [AR 327, 332, 337]; "3+" to "4+" tenderness to palpation with inflammation noted in the bilateral iliac crest, median sacral crest, and PSIS (posterior superior iliac spine) muscles [AR 327, 332, 337]; restricted range of lumbar spine motion due to tenderness, spasm, and swelling [AR 331, 336, 343]; decreased sensation to light touch and pinprick in the right L5 and S1 dermatomal distribution [AR 327, 331, 336]; reflexes "diminished 1+ throughout the Patella and Achilles, bilaterally" [AR 327, 331]; patient either unable to squat or unable to do so without difficulty [AR 331, 336]; positive heel walk and toe walk bilaterally [AR 328, 331, 336]; positive straight leg raising test bilaterally in the supine position[3] [AR 328, 331, 336]; and motor weakness [AR 332, 337]. An August 2007 MRI ordered by Dr. Dureza also yielded positive findings, as previously noted. [See AR 35-36, 340-341].

The Appeals Council concluded that very similar clinical findings made in January 2009 constituted "new and material evidence" warranting an order vacating the ALJ's denial of plaintiff's application for SSI

---

[3] A positive straight leg raising test or positive Lasegue's sign is indicative of pain produced in the sciatic nerve distribution of the opposite leg, as with lumbar disc rupture on the same side as the pain. Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2004).

benefits. Specifically, the Appeals Council noted:

> [T]reatment notes dated January 17, 2009 show upon physical examination there is tenderness, spasms, tightness, and reduced range of motion, positive sciatic stretch signs, and positive straight leg raises. The examination also indicates there is decreased L4-L5 sensation, and the claimant is unable to perform heel and toe walks due to increased pain. It appears that this new evidence shows changed circumstances, indicating a greater disability. Therefore, further evaluation and consideration is needed.

[AR 2].

The January 17, 2009 treatment notes referenced in the Appeals Council's decision were from Daniel A. Capen, M.D., a treating orthopedist. Dr. Capen examined plaintiff again in February 2009 and concluded that his lumbar symptoms had worsened since the previous month. [See AR 70-73]. In a January 2009 "Authorization to Release Medical Information," moreover, Dr. Capen stated that plaintiff's condition had an onset date of August 4, 2000 (the date plaintiff had an on-the-job injury) and was "chronic." [AR 69; see AR 39]. Dr. Capen had a longitudinal treatment relationship with plaintiff, in that he treated plaintiff for lumbar spine disease from November 2004 to January 2006. [AR 40, 108, 263-298]. Therefore, Dr. Capen was familiar with plaintiff's lumbar spine condition both before and after expiration of his insured status on December 31, 2007.

The Appeals Council concluded that Dr. Capen's January 2009 findings showed a greater level of impairment severity than the ALJ found based on the record before him. Dr. Capen's findings are very similar to what the ALJ described as the "significant clinical findings" made by Dr. Dureza between August 2007 and November 2007, prior to plaintiff's date last insured. The ALJ did not have the benefit of that evidence when he concluded that there was no medical evidence showing that plaintiff's lumbar spine impairment lasted, or was expected to last, at least twelve consecutive months from August 2007.

Additional evidence that plaintiff's lumbar spine impairment lasted at least twelve consecutive months from August 2007 is found in post-hearing progress reports from Dr. Dureza dated May 1, 2008 and June 3, 2008. Those reports were submitted to the Appeals Council but were not mentioned by the Appeals Council in its decisions. [See AR 2-3, 46-52, 388-395]. Dr. Dureza's clinical findings in May 2008 and June 2008 were consistent with the findings he reported from August 2007 through November 2007. They

are also consistent with Dr. Capen's examination findings in January 2009 and February 2009. [Compare AR 46-52 with AR 326-346 and AR 66-7].

Dr. Dureza's post-hearing reports show the persistence of plaintiff's lumbar spine signs and symptoms from August 2007 until after his date last insured, while Dr. Capen's notes indicate that those findings continued until at least February 2009, a period of more than twelve consecutive months. When the ALJ found that "the medical evidence does not establish that any worsening of [plaintiff's] condition in August 2007 is ongoing and is reasonably expected to last for 12 months" [AR 35], he did not have that evidence before him. Those reports, however, are part of the record in this action for judicial review. Accordingly, the ALJ's finding that plaintiff's lumbar spine impairment did not meet the durational requirement prior to his date last insured is not based on substantial evidence in the record as a whole.

In finding that plaintiff's lumbar spine impairment did not meet the durational requirement, the ALJ also relied on the results of an August 2007 CT scan and a December 2007 MRI. [See AR 35-36]. The ALJ, however, did not explain how those imaging studies supported his conclusion that plaintiff did not have a lumbar spine impairment that was expected to last at least twelve consecutive months. As noted above, Dr. Dureza reviewed an August 2007 MRI report, which showed mild multi-level degenerative disc disease, a 3 millimeter central disc protrusion at L3-4 associated with a small annular tear, slight neural foraminal[4] narrowing bilaterally, mild transverse compression of the thecal sac, a possible small annular tear at L4-5, and slight narrowing of the neural foramina bilaterally at L5-S1 with mild encroachment upon the L5 nerve roots. [AR 34-35, 340-341]. The August 2007 lumbar CT scan showed "mild disc bulges or protrusions, worse at L3-4 and also at L4-5 worse on the left and also slightly at L5-S1 on the right, with mid ventral impressions on the thecal sac and slight neural foramen encroachment, worse at L3-L4 on the left and at L5-S1 on the right. No frank spinal stenosis noted. Mild old appearing wedging of L3." [AR 35, 369]. Those CT scan findings do not appear to be inconsistent with the contemporaneous MRI findings.

---

[4] An intervertebral or neural foramen is "any of the openings that give passage to the spinal nerves from the vertebral canal and are formed by the juxtaposition of superior and inferior notches in the pedicles of contiguous vertebrae." The Merriam-Webster Medical Dictionary, intervertebral foramen, available at MedlinePlus, a website of the United States National Library of Medicine and the National Institutes of Health, *http://www.merriam-webster.com/medlineplus* (last visited November 8, 2010).

1        The December 2007 MRI showed L4-5, L5-S1 disc desiccation, signal loss, and annular fissures with no spinal stenosis, protrusion, or extrusion. A focal annular tear was seen at L4-5, and an annular fissure was present at L5-S1. [AR 377]. Those findings vary somewhat from the August 2007 MRI and CT scan findings. For example, the August 2007 MRI and CT scan reports showed evidence of a disc protrusion at L3-4, mild compression of the thecal sac, slight neural foraminal narrowing bilaterally at L3-4 and L5-S1, and slight or mild nerve encroachment at L5-S1. [AR 340-341, 368-369]. The December 2007 MRI report does not include such findings. On the other hand, the December 2007 report is consistent with the August 2007 MRI and CT scan reports in showing evidence of disc degeneration and annular tear or annular fissure. The radiologist who reviewed the August 2007 MRI report noted that "small annular tears may account for both pain and radiculopathy." [AR 341]. Nothing in the record suggests that the differences between the August 2007 MRI and CT scan reports and the December 2007 MRI report are significant enough to establish that plaintiff's lumbar spine impairment ceased as of December 2007.

        The ALJ also pointed to a January 2008 state disability insurance form signed by Dr. Cordoba stating that plaintiff was released to return to his "regular/customary work" on January 5, 2008. [AR 371]. In the "diagnosis" section of that form, Dr. Cordoba said that plaintiff's ICD-9 (International Classification of Diseases, Ninth Revision, Clinical Modification) diagnosis code was 724.2, which is low back syndrome or low back pain. See 1 ICD-9 CM Table of Diseases and Injuries § 724 (6th ed. 2010). Dr. Cordoba wrote that plaintiff had chronic and severe pain, lumbar disc desiccation by MRI, and a disc bulge at L3-4 (notwithstanding the absence of a finding of disc bulge on the December 2007 MRI report). [AR 371].

        Dr. Cordoba's statement that plaintiff was released to return to his regular and customary work as of January 5, 2008 is not dispositive. No explanation is provided of how Dr. Cordoba reached that conclusion. The ALJ himself rejected that conclusion by finding that plaintiff's RFC precluded him from performing his past relevant work as a forklift operator or tractor driver. The diagnosis, findings, and symptoms that Dr. Cordoba briefly noted on that form indicate plaintiff continued to exhibit signs and symptoms of lumbar disc disease in January 2008.

        For all of these reasons, the ALJ's finding that plaintiff did not meet his burden to show the existence of a severe physical or mental impairment that had lasted or was expected to last twelve consecutive months prior to his date last insured lacks substantial support in the record as a whole.

///

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

The record as a whole shows that plaintiff's lumbar disc disease met the twelve-month durational requirement prior to his date last insured. A remand is required to permit the ALJ to conduct further administrative proceedings and to issue a new decision containing appropriate findings, including a new credibility finding based on the record as a whole.[5] See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

**Conclusion**

The Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision**.**

**IT IS SO ORDERED.**

November 8 , 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[5] This disposition obviates the need to discuss plaintiff's contention that the ALJ erred in assessing the credibility of his subjective symptoms.